# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| FDIC, AS RECEIVER OF NETBANK, FSB, | |
| Plaintiff, | Case No. 2:02-CV-01051-KJD-LRL |
| v. | **ORDER** |
| SAFECO INSURANCE COMPANY OF AMERICA, | |
| Defendant, | |
| ROYAL INDEMNITY COMPANY, | |
| Third-Party Plaintiff, | |
| v. | |
| A&M Select Insurance Services, Inc., *et al*. | |
| Third-Party Defendants. | |

Before the Court is the Motion for Partial Summary Judgment (#118) filed by Defendant Safeco Insurance Company of America ("Safeco"). Plaintiff FDIC as Receiver of Netbank, FSB ("FDIC") filed an opposition (#131) and Safeco replied (#137).

Background

This case comes before the Court on remand from a Multi-District Litigation ("MDL") action before the Hon. Kathleen M. O'Malley in the Northern District of Ohio. Commercial Money Center ("CMC"), Nevada corporation, was an equipment leasing company. CMC originated sub-prime leases for business equipment. To guaranty payments from the lessee, CMC obtained lease bonds from various insurers. CMC obtained bonds from Safeco through Michael Anthony of Anthony & Morgan, a bond agent in California. CMC then bundled the leases into a pool and assigned the rights to receive payment and the rights to make a claim on the lease bonds to various banks, including FDIC, in exchange for an investment in CMC.

CMC, through its subsidiary Commercial Servicing Corporation ("CSC"), serviced the leases. When CMC assigned the right to receive lease payments and rights on the lease bonds to an investor bank, CMC, the investor bank, and the surety which issued the lease bonds for the leases in the pool, entered into a "Sale and Servicing Agreement" ("SSA"). Under that agreement, the surety acted as a servicer of the leases and appointed CMC as the sub-servicer. The equipment leases were for terms of five years.

In 2001, CMC stopped forwarding lease payments. FDIC attempted to claim on the lease bond. Safeco determined that CMC had fraudulently induced Safeco to participate in the lease bond scheme and refused to pay FDIC's claim on the bond. FDIC alleges breach of contract, breach of fiduciary duty, promissory estoppel, conversion, bad faith, breach of the covenant of good faith and fair dealing, fraud, and declaratory relief. Royal Insurance Company filed a third-party action against A&M Select Insurance Services, Inc. and Michael Anthony.

II.  Analysis

A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ.

P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the non-moving party. See Matsushita, 475 U.S. at 587.  However, the non-moving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

B.  Choice of Law

Judge O'Malley held that the law of the state of Georgia applies to the issues of bad faith and breach of the implied covenant of good faith and fair dealing.  Safeco has conceded for purposes of this motion that Georgia law applies to Safeco's other claims.  Accordingly, the Court will apply Georgia law.

3

### C. Conversion and Anticipatory Repudiation

FDIC has conceded that its claims for conversion and anticipatory repudiation are now moot and "subsumed" by the breach of contract and bad faith claims. (Opp. at 2.) Accordingly summary judgment is granted in favor of Safeco on FDIC's fifth cause of action for conversion and eleventh cause of action for anticipatory repudiation.

### D. Bad Faith

Bad faith involving a surety is covered under Official Code of Georgia Annotated (O.C.G.A) §10-7-30(b) which provides:

> "In the event of the refusal of a corporate surety to commence the remedy of a default covered by, to make payment to an obligee under, or otherwise to commence performance in accordance with the terms of a contract of suretyship within 60 days after receipt from the obligee of a notice of default or demand for payment, and upon defining that such refusal is in bad faith, the surety shall be liable to pay such obligee, in addition to the loss, not more than 25% of the liability of the surety for the loss and all reasonable attorneys' fees for the prosecution of the case against the surety."

The recovery provided in O.C.G.A. §10-7-30 is a penalty, and therefore must be strictly construed. Interstate Life & Accident Ins. Co. v. Williamson, 220 Ga. 323, 324-325, 138 S.E.2d 668, 669 (Ga. 1964). To recover under O.C.G.A. §10-7-30, a plaintiff must first prove that it made a demand for payment against surety at least sixty days before filing suit, specifying in that demand that plaintiff will bring a bad faith claim if payment is not made. Arrow Exterminators, Inc. v. Zurich American Ins. Co., 136 F. Supp.2d 1340, 1355 (N.D. Ga. 2001); BayRock Mortg. Corp. v. Chicago Title Ins. Co., 286 Ga. App. 18, 20, 648 S.E.2d 433, 435-36 (Ga. 2007).

The United States District Court for the Northern District of Georgia, interpreting a similar statute held:

> The purpose of the demand requirement is to notify the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim. Although no particular language is required, the language used must be sufficient to alert the insurer that a bad faith claim will be asserted if the specific loss noted is not

4

paid. Because O.C.G.A. §33-4-6 imposes a penalty on the insurer, the statute must be strictly construed.[1]

Arrow Exterminators, 136 F.Supp.2d at 1356 (citations omitted in original).

FDIC's first demand to Safeco was made December 28, 2001 and did not give any indication that FDIC was seeking to recover for bad faith. Subsequent FDIC correspondence and demands did not mention bad faith. FDIC filed suit in Georgia state court on January 28, 2002, thirty days after the initial demand. That complaint did not include a count for bad faith, nor did the first amended complaint filed in the Georgia state court action, although the first amended complaint did assert a cause of action for fraud. After the MDL action commenced, FDIC filed a Second Amended Complaint on December 23, 2002 which, for the first time, asserted a claim for bad faith against Safeco. The sixty day limitation in O.C.G.A. §10-7-30, required FDIC to have given Safeco written notice of its intent to pursue its bad faith claim no later than October 23, 2002. FDIC points to a July 19, 2002 letter regarding an alleged conflict of interest of a sub-servicer. In that letter, FDIC demands documents and audio recordings relating to the servicer matter and states: "It appears that Safeco has been engaged in an effort to defraud NetBank and any privilege regarding these matters, even if valid, will be vitiated under the crime fraud exception to the attorney-client privilege."

### 1. Demand Letter

FDIC argues that the July 19, 2002 letter was sufficient to put Safeco on notice that it was being sued for bad faith. FDIC cites to a 1966 case, Cotton States Mut. Ins. Co. v. Clark, where the oral statement "Well, if you won't pay me I'll have to take you in court" was held to be sufficient to comply with the demand requirement. 114 Ga.App. 439, 447, 151 S.E.2d 780, 786 (Ga. Ct. App. 1966). Safeco points to the more recent Arrow Exterminators opinion. There, on a motion for summary judgment, the court held that a demand letter claiming intentional mishandling of claims

---

[1] The Arrow Exterminators case examines O.C.G.A. §33-4-6, an insurance statute that has been recognized as "virtually identical" to O.C.G.A. §10-7-30. McDevitt & Street Co. v. K-C Air Conditioning Service, Inc., 203 Ga.App. 640, 646, 418 S.E.2d 87, 93 (Ga.Ct. App. 1992)(applying reasoning of cases interpreting §33-4-6 to case governed by §10-7-30). FDIC does not contest Arrow Exterminators' applicability on this ground.

was insufficient because it did not contain any reference to a claim for bad faith, did not state that the insured was contemplating litigation, and did not request that the insurer pay any loss.

The July 19, 2002 letter was insufficient to put Safeco on notice that FDIC would be suing Safeco for bad faith if it did not pay the specific loss. The letter demands removal of the sub-servicers and seeks documents and recordings from Safeco. Although the letter mentions fraud, Safeco was already being sued by FDIC for fraud. The passage FDIC cites relates to the possibility of defeating a potential claim of attorney-client privilege under the crime-fraud exception. The letter did nothing to alert Safeco that unless it paid the claim FDIC would assert a cause of action for bad faith.

### 2. Amendment

FDIC argues that the actions forming the basis of its bad faith claim did not take place until after the filing of the original suit and that it was justified when it amended its complaint to add the claim after the litigation began started. In support of this contention, FDIC cites Claussen v. Aetna Cas. & Sur. Co., 754 F. Supp 1576, 1583 (S.D. Ga. 1990). There, the court allowed a claimant to amend his complaint to assert a claim for bad faith after the start of the litigation. However, unlike the present case, the party seeking to amend in Claussen complied with the statute by sending a demand letter prior to seeking leave to amend the complaint to add the bad faith claim. The court considered the demand letter sufficient to satisfy the stringent notice requirement of the statute. However, the court only permitted the plaintiff to seek attorneys' fees from the date of the demand.

In the present case, FDIC did not notify Safeco prior to amending and supplementing its complaint to include a claim of bad faith as required by O.C.G.A. §10-7-30. This violates the clear language of the penalty statute which is to be "strictly construed." Williamson, 138 S.E.2d at 669. That statute is designed to give Safeco notice of the intent to sue for bad faith prior to being sued for bad faith "so that it may decide whether to pay the claim." Arrow Exterminators, 136 F.Supp.2d at

1356. Safeco was denied this opportunity.[2] Accordingly, summary judgment on FDIC's claim for bad faith is granted in favor of Safeco.

### E.  Breach of the Implied Covenant of Good Faith and Fair Dealing

"In Georgia, every contract imposes upon each party a duty of good faith and fair dealing in the performance of their respective duties and obligations." TechBios, Inc. v. Champagne, 301 Ga.App. 592, 595, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009).  This cause of action must be accompanied by a claim for breach of contract, but can be pled as a separate count in the complaint. See, e.g., Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368, 1381 (N.D.Ga. 2004) (where plaintiff asserted claim for breach of contract, additional claim for breach of the covenant of good faith and fair dealing was appropriate).

Safeco moves for summary judgment on FDIC's tenth count for breach of the implied covenant of good faith and fair dealing.  Safeco argues that O.C.G.A. §10-7-30 is "the exclusive remedy for the alleged bad faith or wrongdoing of a surety in regard to denying for failing to pay a bond claim."  (Reply at 5; see also Mo. at 12.) Safeco cites two cases holding that a similar statute is the exclusive remedy for bad faith claims against insurance companies on insurance contracts.[3] Howell v. Southern Heritage Insurance Company, 214 Ga. App. 536, 537; 448 S.E. 2d. 275, 276 (1994); Johnston v. Companion Property and Casualty Surety Company, 2009 WL 632580, 11th Cir. (2009). FDIC provided no response in its opposition.

The Court can discern no meaningful distinction between a claim for bad faith and a claim for breach of the covenant of good faith and fair dealing. See, e.g., Building Materials Wholesale, Inc. v. Reeves, 209 Ga.App. 361, 363, 433 S.E.2d 346, 349 (Ga. Ct. App.,1993) (claim for bad faith breach of contract arose out of duty of good faith and fair dealing).  O.C.G.A. §10-7-30 provides the

---

[2]  Permitting FDIC to give proper notice and then amend its complaint at this late date would not serve the ends of justice. See Fed. R. Civ. P. 15 (2).

[3]  As noted in footnote 1, *supra*, O.C.G.A. § 33-4-6 is "virtually identical" to § 10-7-30.  McDevitt & Street Co., 418 S.E.2d at 93.

7

exclusive remedy for bad faith claims against sureties. As discussed *supra,* FDIC failed to adequately provide notice of its bad faith claim in compliance with this statute. Accordingly, summary judgment is granted in favor of Safeco on the claim for breach of the covenant of good faith and fair dealing.

III.  Conclusion

      **IT IS HEREBY ORDERED** that Safeco's Motion for Partial Summary Judgment (#118) is **GRANTED** as to the fifth, ninth, tenth an eleventh counts of FDIC's Third Amended Complaint.

      DATED this 12th day of October 2011.

_____
Kent J. Dawson
United States District Judge